THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

ATAKAPA INDIAN
de Creole NATION

    *Plaintiff*

    V

LOUISIANA through the Governor's office of Indian Affairs
and THE UNITED STATES through Attorney General et al

    *Defendant*

Civil Action No:

District Court Judge:
Magistrate:

## PLAINTIFFS' APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER and INJUNCTION

MAY IT PLEASE THE COURT:

Table of Contents

- **a. His Majesty is likely to succeed at trial;** ................................................................... 5
    - i. Treaty of Friendship, Limits, and Navigation Between Spain ............................... 6
    - and The United States; October 27, 1795 .............................................................. 6
- **b. The balance of hardships tips in his Majesty's favor;** ...................................... 7
- **c. His Majesty will suffer irreparable harm** ............................................................ 9
    - i. 8 U.S.C.A. § 1401. Nationals and citizens of United States at birth .................... 9
    - ii. Guardian and Ward ............................................................................................... 10
    - iii. United States and State of Louisiana Breach of Fiduciary Duty ....................... 11
    - iv. Conflict of interest exists between guardian and ward ....................................... 11
    - v. Baton Rouge City Police Alarm Use Violation Final Notice ............................. 12
    - vi. Oil and Gas Leases ............................................................................................... 13
    - vii. American-l'iberian Indian Tribe of מֹשֶׁה Moses Family Integrity ..................... 13
- **d. The Balance of Harms and Public Interest Favor a Temporary Restraining Order** ........... 14
- **e. Application for Writ of Habeas Corpus filed under title 28 Chapter 153** ...................... 14
    - i. Application for Writ of Habeas Corpus is not confined to those in jail or like physical confinement ..... 15
- **ORDER** .................................................................................................................. 19
- **VERIFIED COMPLAINT** .................................................................................. 30
- **a. NATURE OF THE CASE** ............................................................................... 31
- **b. JURISDICTION AND VENUE** ...................................................................... 32

*c.* *PARTIES*.................................................................................................................... 32

*d.* *CO-CONSPIRATORS AND AGENTS* ................................................................ 55

*e.* *CLASS ACTION ALLEGATIONS*........................................................................ 55

*f.* *Defendants Are Competitors* ................................................................................ 57

*g.* *BACKGROUND AND REASONS FOR URGENCY- Currency Markets*.................................. 58

*h.* *Violation of Human Rights of American Aboriginals* ............................................ 58

  *business is now cash flow insolvent.* ...................................................................... 59

*i.* *VIOLATION OF Civil Rights Act of 1871 – KU KLUX KLAN ACT* ......................... 61

*j.* *ESSENTIAL FACTILITIES* ................................................................................... 62

*k.* *State Street Rules for WM/Reuters Rates Setting* ............................................... 66

*l.* *WM/Reuters Rates' Use as a Pricing Mechanism*................................................. 67

*m.*   *Defendants' Anti-Competitive Conduct* ........................................................... 70

*n.* *Government Investigations* .................................................................................. 72

*o.* *Injury to The Christian Emperor D'Orleans*.......................................................... 74

*p.* *FRAUDULENT CONCEALMENT* ........................................................................ 74

*q.* *FIRST CLAIM FOR RELIEF* ................................................................................ 75

*r.* *SECOND CLAIM FOR RELIEF* ........................................................................... 77

*s.* *THIRD CLAIM FOR RELIEF*................................................................................ 78

*t.* *TRADEMARK INFRINGEMENT - TEMPORARY RESTRAINING ORDER* ............... 79

    i.   Fraud ............................................................................................................. 79

*u.* *THE COVENANT OF ONE HEAVEN* ................................................................. 80

    i.   As Supreme Agreement and Covenant ........................................................ 87
    ii.  As Supreme Treaty ....................................................................................... 87
    iii. As Supreme Trust and Title of Ownership ................................................... 88
    iv.  As Supreme Conveyance of All Property ..................................................... 89
    v.   As source of Supreme Authority and Rights................................................. 89
    vi.  As object of Supreme Covenant Value: ....................................................... 90
    vii. A Covenant to enable and empower the organization: ............................... 91
    viii.  INTERNATIONAL MONETARY EXCHANGE ............................................ 93

*v.* *Declaration of mutual legal assistance in Religious and criminal matters* .................... 100

*w.*   *§ 6048. Information with respect to certain foreign trusts* ........................................ 104

*x.* *REQUEST FOR RELIEF*................................................................................... 125

Cases

Alabama-Coushatta Tribe of Texas v. United States, 757 F.3d 484 (5th Cir.2014) .................................................... 12
Atakapa Indian de Creole Nation v. Louisiana, 6:18-CV-00190, 2018 WL 4222830, at *3 (W.D. La. July 23, 2018), report and rec ............................................................................................................................................ 15, 17
Cesaroni v. U.S., S.D.Ga.1985, 624 F.Supp. 613, affirmed 780 F.2d 1031, certiorari denied 106 S.Ct. 1970, 476 U.S. 1115, 90 L.Ed.2d 654 .................................................................................................................................. 7
Coleman v. U.S. Bureau of Indian Affairs, 715 F.2d 1156, 1158 (7th Cir.1983) ............................................................ 11
*Danzell* v. *Webquish*, 108 Mass. 133 ................................................................................................................... 11, 16
Elk v. Wilkins, 112 U.S. 94, 108, 5 S.Ct. 41, 48, 28 L.Ed. 643 (1884 ........................................................................... 11
Frazee v. Spokane Cty., 29 Wash. 278, 286, 69 P. 779, 782 (1902) ............................................................................. 16
Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d ......................................................... 6
Huffman v. Prudential Ins. Co. of Am., 2:10-CV-05135, 2017 WL 6055225, at (E.D. Pa. Dec. 7, 2017) ...................... 11
Hyde v. Jenkins, 6 La. 427, 436 (1834) ....................................................................................................................... 17
In re Cumberland Farms, Inc., 284 F.3d 216, 231 (1st Cir. 2002) ................................................................................ 11
In re McPherson, 564 B.R. 6 (Bankr. D. Mass.2017) .................................................................................................. 11
Jefferson Disposal Co., Inc. v. Jefferson Parish, La., 603 F.Supp. 1125, 1130 (E.D. La. 1985) .................................. 4,5
Johnson v. M'Intosh, 21 U.S. 543, 587, 5 L.Ed. 681 (1823) .................................................................................. 15, 57
Jones v. Cunningham, 371 U.S. 236, 238, 83 S.Ct. 373, 374–75, 9 L.Ed.2d 285 (1963) ................................. 15, 16, 17
Keith v. Jackson, E.D.Pa.1994, 855 F.Supp. 765. Fed. R. Civ. P. 17 ........................................................................... 12
M.G.U. v. Nielsen, 325 F. Supp. 3d 111, 121-23 (D.D.C. 2018) ............................................................................. 9, 14
Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386 (7th Cir. 1984) ............................................................... 6
McSparran v. Weist, C.A.3 (Pa.) 1968, 402 F.2d 867, certiorari denied 89 S.Ct. 1739, 395 U.S. 903, 23 L.Ed.2d 217.12
Mills v. Dist. of Columbia, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ................................................................................. 9
Ozaltin v. Ozaltin, 708 F.3d 355 (2d Cir.2013) ............................................................................................................. 8
*Pells* v. *Webquish*, 129 Mass. 469; Mass. St. 1862, *c.* 184; 1869, *c.* 463 ................................................................... 11
Ream v. Frey, 107 F.3d 147, 153-54 (3d Cir. 1997) ................................................................................................... 11
Santosky v. Kramer, 455 U.S. 745, 766-67 (1982)] .................................................................................................. 14
See H.K. Porter Company v. Metropolitan Dade County, 650 F.2d 778 (5th Cir.1981); Save the Bay, Inc. v. The United States Army, 639 F.2d 1100 (5th Cir.1981) ......................................................................................... 5
See M.M.M. v. Sessions, No. 18-cv-1832, Order Granting Plaintiffs' Motion for Temporary Restraining Order (S.D. Cal., August 16, 2018 ................................................................................................................................. 14
see, e.g., Wooley v. City of Baton Rouge, 211 F.3d 913, 923 (5th Cir. 2000) ............................................................. 14
Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1204–05 (2d Cir. 1970) ........................................................ 6
State of Louisiana v. Judge of Commercial Court, 15 La. 192, 193 (1840) ................................................................. 17
The Amistad, 40 U.S. 518, 10 L.Ed. 826 (1841) ........................................................................................................ 78
Underwriters at Lloyds Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea Ltd., 16-10985, 2018 WL 914780 (11th Cir. Feb. 16, 2018 ............................................................................................................ 7
United States v. Cooper Corp., 312 U.S. 600, 604, 61 S.Ct. 742, 743, 85 L.Ed. 1071 (1941) ...................................... 7
United States v. Dunn, 268 U.S. 121, 45 S.Ct. 451, 69 L.Ed. 876 (1925 ..................................................................... 13
Wooley v. City of Baton Rouge, 211 F.3d 913, 923 (5th Cir. 2000) ............................................................................ 14

Statutes

§ 13.36.370. **Trust** protector ...................................................................................................................................... 113
28 U.S.C. s 2241 ......................................................................................................................................................... 10
46 App. USCA § 743 ................................................................................................................................................... 88
46 App. USCA § 745 § 30911 ..................................................................................................................................... 88
46 U.S.C.A. § 30911 .................................................................................................................................................... 88
**48 Stat. 984** ................................................................................................................................................................ 22
St. of 1869, *c.* 463, § 1 ................................................................................................................................................. 8

Other Authorities

https://en.wikipedia.org/wiki/G20 ........................................................................................ 27
https://tfm.fiscal.treasury.gov/v2/p6/c300.pd .................................................................... 54
https://www.cnbc.com/2019/01/09/trump-prime-time-sales-pitch-for-border-wall-didnt-change-anything-in-shutdown-fight.htm ........................................................................... 3
https://www.treasury.gov/about/education/Pages/Freedman%27s-Bank%27sDemise.aspx ........ 50
https://www.usnews.com/news/best-states/rankings ............................................................ 7
Vattel, Emer de. The Law of Nations (Natural Law and Enlightenment Classics) ........................ 7

Treatises
11A WRIGHT &MILLER, FED. PRAC. &PROC. § 2948.1 (2d ed. 2004) ................................ 6
Constitutional Provisions
U.S.C.A. Const. Art. 2, § 2, cl. 2. ......................................................................................... 5

**NOW COMES**, the **CHRISTIAN EMPEROR, Edward Moses Jr, Trust Protector of the American-l'iberian Indian Tribe of מֹשֶׁה Moses** also known as the Atakapa Indian de Creole Nation who seeks an "EMERGENCY TEMPORARY RESTRAINING ORDER" with notice to the adverse parties and a preliminary injunction. Private company, the Royal Crown of American Aboriginal Indians brought antitrust action against local government, the Parish of East Baton Rouge, Iberia, St. Martin, Orleans et al, subdivisions of the State of Louisiana, and local officials, in their capacity as Mayors of the several parishes among other defendants.[1] Jefferson Disposal Co., Inc. v. Jefferson Parish, La., 603 F.Supp. 1125, 1130 (E.D. La. 1985)(suggesting that persons who were injured by anticompetitive conduct of a local government retained rights to injunctive relief under Section 16 of the Clayton Act).[2]

Injunctive relief, however, is available prospectively. The Supreme Court in National Society of Professional Engineers v. United States instructed that a district court is empowered to fashion appropriate restraints on a defendant's future activities "both to avoid a recurrence of the violation and to eliminate its consequences." 435 U.S. at 697, 98 S.Ct. at 1368 (citations

---

[1] Jefferson Disposal Co., Inc. v. Jefferson Par., La., 603 F.Supp. 1125 (E.D. La.1985)
[2] See H.K. Porter Company v. Metropolitan Dade County, 650 F.2d 778 (5th Cir.1981); Save the Bay, Inc. v. The United States Army, 639 F.2d 1100 (5th Cir.1981).

4

omitted). Thus, so long as the injunctive relief is "a reasonable method of eliminating the consequences of the illegal conduct," it may be rendered. *Id.* In the instant case, the availability of prospective injunctive relief is of major importance; although it does not satisfy the ROYAL CROWN's more pecuniary concerns, it provides the ROYAL CROWN with the opportunity to challenge the legality of the Parishes monopolistic, anti-competitive activity and, if successful in proving a violation of the antitrust laws, to have the Court correct the process for the future.[3]

### a. His Majesty is likely to succeed at trial;

Addressing American Nationals and United States Citizens from the Oval Office, Republican President of the United States his excellency Mr. Donald Trump declared a National Crisis.[4] He decried the "cycle of human suffering" produced by the current government shutdown, regarding a United States southern border security issue. Mr. Donald Trump declared that the government shutdown hurts [sic] **American Aboriginals** fraudulently titled **African-Americans**, and Latino women and children. Today, his Majesty filed a Verified Complaint in conjunction with its application for a temporary restraining order and preliminary and permanent injunction. The United States President accepted full responsibility for the Government Shutdown. His Majesty contends that the defendants are once again engaging in antitrust violations and monopolization of domestic, international and intergalactic commercial markets that, unless enjoined and restrained, will imminently and immediately put his Majesty out of business.[5]

---

[3] Jefferson Disposal Co., Inc. v. Jefferson Par., La., 603 F.Supp. 1125, 1133–34 (E.D. La.1985)
[4] https://www.cnbc.com/2019/01/09/trump-prime-time-sales-pitch-for-border-wall-didnt-change-anything-in-shutdown-fight.html
[5] See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1089 (7th Cir. 2008) (evidence of "severe financial stress . . . that could ultimately force [a company] into insolvency," or evidence of a "risk to the organization's significant goodwill," supports a finding of irreparable harm for which there is no adequate remedy at law); Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386 (7th Cir. 1984) (damages ready is inadequate when the "damage award may come too late to save the plaintiff's business" (quoting Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1204–05 (2d Cir. 1970) (Friendly, J.)).

5

### i. Treaty of Friendship, Limits, and Navigation Between Spain and The United States; October 27, 1795

In <u>Atakapa Indian de Creole Nation v. Louisiana</u> the court accepted all factual allegations in the plaintiff's complaint as true.[6] His Majesty claims through intestate succession judgment of possession descent "from Fanchon Tribal mother of the East Atakapa Nation and Jupiter, Chief Captain of the Western Atakapa Indian Nation[.][7] Ours, the Americans, is an international treaty contract that arises in maritime tort to conduct commercial domestic, international, intergalactic intercourse with foreign Nations i.e. the United States, and Spain.

Article V of the Spanish treaty states as follows:

> And whereas several treaties of Friendship exist between the two contracting Parties and the said **Nations of Indians**, it is hereby agreed that in future no treaty of alliance or other whatever (except treaties of Peace) shall be made by either Party with the Indians living within the boundary of the other; but **both Parties** will endeavour to make the advantages of **the Indian trade common and mutually beneficial** to their respective Subjects and Citizens **observing in all things the most complete reciprocity**: so that both Parties may obtain the advantages arising from a good understanding with the said Nations….

Therefore, exclusive jurisdiction is conferred on the district court, and in this instance, the treaty contract that his Majesty rely on is recognized as a contract enforceable against the United States, French and Spanish governments[8] In the present case, The United States and Spain entered into a contract to engage in commercial intercourse with the Atakapa Indians at Post d'Atakapa, New Spain. The United States is a juristic person in the sense that it has capacity to sue OR be sued upon contracts made with it or in vindication of its property rights. [9]

---

[6] <u>Atakapa Indian de Creole Nation v. Louisiana</u>, 6:18-CV-00190, 2018 WL 4222830, at *1 (W.D. La. July 23, 2018), <u>report and recommendation adopted,</u> 6:18-CV-00190, 2018 WL 4089385 (W.D. La. Aug. 27, 2018)

[7] <u>Atakapa Indian de Creole Nation v. Louisiana</u>, 6:18-CV-00190, 2018 WL 4222830, at *1 (W.D. La. July 23, 2018), <u>report and recommendation adopted,</u> 6:18-CV-00190, 2018 WL 4089385 (W.D. La. Aug. 27, 2018)

[8] Cesaroni v. U.S., S.D.Ga.1985, 624 F.Supp. 613, affirmed 780 F.2d 1031, certiorari denied 106 S.Ct. 1970, 476 U.S. 1115, 90 L.Ed.2d 654.

[9] <u>United States v. Cooper Corp.</u>, 312 U.S. 600, 604, 61 S.Ct. 742, 743, 85 L.Ed. 1071 (1941)

This is an antitrust suit against a local government, the Parish of St. Martin, Iberia, Opelousas, Lafayette, East and West Baton Rouge, Orleans, Plaquemine, Natchitoches, and Caddo, subdivisions of the State of Louisiana, and their local officials in their capacity as Mayor.[10] There is significant doubt that this Court, under its equity powers, could set aside the treaty contract entered into between the Spanish and United States from 1795 for the engagement in domestic, international, intergalactic commercial intercourse with the Atakapa Indians located at post d'atakapa.[11]

The goal of treaty interpretation is to determine parties' actual intention because it is the court's responsibility to give a treaty's specific words meaning consistent with contracting parties' shared expectations.[12] Under federal common law, [sic] contract language plain meaning governs its interpretation. Id. Under federal common law, document should be read to give effect to all its provisions and to render them consistent with each other.id. As a general matter, the United States becomes a "party" to a treaty, that is, becomes contractually bound to obey its terms, only when, upon concurrence of two thirds of the Senators present, the President ratifies the treaty. [13][14]

    **b.   The balance of hardships tips in his Majesty's favor**;

Neither the State of Louisiana nor the United States has ever acknowledged the Atakapa Indian de Creole Nation (the "Atakapas") as an absolute sovereign indigenous nation to Louisiana, despite the United States having taken possession of the Atakapas' historical tribal land and trading posts in present day New Orleans, St. Martinville, Opelousas, New Iberia, Lafayette, Baton Rouge and Lake Charles, Louisiana, such that the Atakapas "are being held as

---

[10] Jefferson Disposal Co., Inc. v. Jefferson Par., La., 603 F.Supp. 1125, 1127 (E.D. La.1985)
[11] See H.K. Porter Company v. Metropolitan Dade County, 650 F.2d 778 (5th Cir.1981); Save the Bay, Inc. v. The United States Army, 639 F.2d 1100 (5th Cir.1981).
[12] Underwriters at Lloyds Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea Ltd., 16-10985, 2018 WL 914780 (11th Cir. Feb. 16, 2018)
[13] U.S.C.A. Const. Art. 2, § 2, cl. 2.
[14] Ozaltin v. Ozaltin, 708 F.3d 355 (2d Cir.2013)

wards of the State through the Louisiana Governor's Office through the Office of Indian Affairs ... [a]nd in pupilage under [the] United States[.]"[15]

His Majesty requests that an **Emergency Temporary Restraining Order and preliminary Injunction Issued with Notice to the adverse parties** based on the fact that the President of the United States' indefinitely closed the United States Federal Government, specifically, nine federal departments; They are the:

- Department of the Treasury
- Department of Agriculture
- Homeland Security Department
- Department of the Interior
- Department of State
- Department of Housing and Urban Development
- Department of Transportation
- Department of Commerce
- Department of Justice

This is a state of extreme emergency; the President of the United States has stated that he is prepared to keep these departments closed for months even years if he doesn't obtain funding from the United States Congress for a steel Security Fence along the Southern Border of the United States.  The actions of the United States President unnecessarily injure his Majesty because it is believed that the United States has legalized the production of hemp which can be used for creation of a brick border wall.

It is further believed that the United States Congress has already signed into law a bill that would fund production of hemp in its recently passed Farm Bill.  The Christian Emperor contends that the United States President took these actions and stalled litigation on the matters addressed in his verified petition for a temporary restraining order and preliminary injunction. And as such, the United States President has accepted full responsibility for closing the United States Government and for injuring an entire nation of American Aboriginal Indigenous people

---

[15] Atakapa Indian de Creole Nation v. Louisiana, 6:18-CV-00190, 2018 WL 4222830, at *1 (W.D. La. July 23, 2018), report and recommendation adopted, 6:18-CV-00190, 2018 WL 4089385 (W.D. La. Aug. 27, 2018)

8

falsely labeled African Americans and Bozal, Latino, Ladinos, Latinos women and children is, necessarily, a fraud; together with roughly 800,000 Federal Employees by unlawfully withholding their income for work performed. Many of these people are his Majesty's citizen's, subjects or assigns. The closure of these Federal Departments has caused immediate and irreparable injury, loss, and damage to his majesty, his people and their property before the adverse parties can be heard in opposition.

    **c. His Majesty will suffer irreparable harm (for which money damages cannot compensate)**

Separation Causes Immediate, Ongoing, Irreparable Harm "[L]oss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.[16] As a result, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."[17] The threat of separation and any actual separation causes immediate, ongoing, severe trauma to Plaintiffs, as would any period of forced separation, for which no remedy at law is available.[18]

    **i. 8 U.S.C.A. § 1401. Nationals and citizens of United States at birth**

The following shall be nationals and citizens of the United States at birth:

> **(a)** a person born in the United States, and subject to the jurisdiction thereof
>
> **(b)** a person born in the United States to a member of <u>an Indian</u>, Eskimo, Aleutian, or other <u>aboriginal tribe</u>: *Provided*, <u>That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property</u>;

---

[16] Mills v. Dist. of Columbia, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (citations omitted).
[17] 11A WRIGHT &MILLER, FED. PRAC. &PROC. § 2948.1 (2d ed. 2004).
[18] M.G.U. v. Nielsen, 325 F. Supp. 3d 111, 121-23 (D.D.C. 2018).

The Atakapas have been granted United States citizenship status as **"African Americans"** but their status as United States citizens "impairs and deprives [them] from exercising their birth rights to their international and domestic tribal lands and other property.[19]

### ii. Guardian and Ward

The Atakapas "are being held as wards of the State through the Louisiana Governor's Office of Indian Affairs ... [a]nd in pupilage under [the] United States[.]"[20] The legal relationship that exists between a person (the guardian) appointed by a court <u>to take care of and manage the property of a person</u> (the ward) who does not possess the legal capacity to do so, by reason of age, comprehension, or self-control.  In 1812 the State of Louisiana through the United States assumed a fiduciary relationship with the indigenous Indians specifically the Atakapa Indian Nation of East and West Florida[21] (Orleans Parishes) and the vast Louisiana Territory, New Spain.  … In some of the old states 'where small remnants of tribes, people of color, remain, surrounded by white population, and who, by their reduced numbers, had lost the power of self-government, the laws of the state have been extended over them, **<u>for the protection of their persons and property</u>**.'[22][23]

---

[19] <u>Atakapa Indian de Creole Nation v. Louisiana</u>, 6:18-CV-00190, 2018 WL 4222830, at *1 (W.D. La. July 23, 2018), <u>report and recommendation adopted,</u> 6:18-CV-00190, 2018 WL 4089385 (W.D. La. Aug. 27, 2018)

[20] <u>Atakapa Indian de Creole Nation v. Louisiana</u>, 6:18-CV-00190, 2018 WL 4222830, at *1 (W.D. La. July 23, 2018), <u>report and recommendation adopted,</u> 6:18-CV-00190, 2018 WL 4089385 (W.D. La. Aug. 27, 2018)

[21] La. Rev. Stat. Ann. § 25:701That portion of Louisiana east of the Mississippi River and north of the Isle of Orleans, which was part of the British Colony of West Florida until 1779, the Spanish Colony of West Florida until 1810, and finally the Republic of West Florida in late 1810, is an official region of the state of Louisiana. This unique region, which has national and international significance, shall be known as the Republic of West Florida Historic Region, or the Florida Parishes of Louisiana. The region shall include the parishes of East Baton Rouge, East Feliciana, Livingston, St. Helena, St. Tammany, Tangipahoa, Washington, and West Feliciana.

[22] *Danzell* v. *Webquish*, 108 Mass. 133; *Pells* v. *Webquish*, 129 Mass. 469; Mass. St. 1862, *c.* 184; 1869, *c.* 463
[23] <u>Elk v. Wilkins</u>, 112 U.S. 94, 108, 5 S.Ct. 41, 48, 28 L.Ed. 643 (1884)

### iii. United States and State of Louisiana Breach of Fiduciary Duty

Broad definition of "fiduciary" under non-bankruptcy law, namely, a relationship involving trust, confidence, and good faith, … under federal law arises by virtue of an express … trust. 11 U.S.C.A. § 523(a)(4).[24] Courts use the common law of trusts as a guide to interpreting fiduciary duties … and stating an affirmative defense of acquiescence or consent to a breach of trust complaint under common law requires full disclosure of material facts.[25] ("For a cestui que trust to 'ratify' or confirm a breach of trust, he must be apprised of all the material facts and as well of their legal effect. No half-hearted disclosure or partial discovery is sufficient in either respect."); Restatement (Second) of Trusts § 216 (1959) Huffman v. Prudential Ins. Co. of Am., 2:10-CV-05135, 2017 WL 6055225, at (E.D. Pa. Dec. 7, 2017) ("The mere fact ... that the beneficiary does not object to a deviation from the terms of the trust is not consent to such deviation."). id.

### iv. Conflict of interest exists between guardian and ward

In the case before this court, however, a conflict of interest exists between the United States and the State of Louisiana government as guardian and the Atakapa Indian de Creole Nation as ward with regard to Aboriginal title of land which the US Courts claim is an equitable possessory interest, which is not superior to that possessed by the United States, the actual title holder.[26] While executor or administrator of an estate takes title to property of decedent, guardian of person of minor or other incompetent **has no interest** in his ward's property and guardian of his estate does not take legal title to the property, which remains in the ward, but merely acts as its custodian or manager.[27]   When conflict of interest exists between guardian and ward, the

---

[24] In re McPherson, 564 B.R. 6 (Bankr. D. Mass.2017)
[25] *See Ream v. Frey*, 107 F.3d 147, 153-54 (3d Cir. 1997); *In re Cumberland Farms, Inc.,* 284 F.3d 216, 231 (1st Cir. 2002)
[26] Alabama-Coushatta Tribe of Texas v. United States, 757 F.3d 484 (5th Cir.2014)
[27] McSparran v. Weist, C.A.3 (Pa.) 1968, 402 F.2d 867, certiorari denied 89 S.Ct. 1739, 395 U.S. 903, 23 L.Ed.2d 217.

11

court is required to determine whether appointment of guardian ad litem is necessary to protect the interests of the ward even if incompetent already has a general representative, and where conflict of interest becomes apparent early in the litigation, appointment of guardian ad litem would be the customary and appropriate course.[28]

The conflict in this instance is apparent, the US as guardian of the Atakapa allegedly purchased the vast Louisiana territory from France and East and West Florida from Spain, all Atakapa Land without apprising the Atakapa Indians of all the material facts and as well of their legal effect. The United States Supreme Court has held that the guardian … of an incompetent has no interest in his ward's property and the guardian of his estate does not take legal title to the property, which remains in the ward, but merely acts as its custodian or manager.[29]

v. **Baton Rouge City Police Alarm Use Violation Final Notice**

In <u>Atakapa Indian de Creole Nation v. Louisiana</u> the court accepted all factual allegations in the plaintiff's complaint as true.[30] The petition states that the plaintiff is trustee of "an express trust established in accordance with the October 27, 1795 Treaty of Friendship, Limit and Navigation Between the Catholic Majesty of Spain individually and on behalf of the Atakapa Indian de Creole Nation and The United States; otherwise known to the Atakapa Indian de Creole Nation as Pactum De Singularis Caelum, the Covenant of One Heaven[.]" Rec. Doc. 1, p. 1.[31] ART. V. of the Spanish Treaty specifically states:

> The two High contracting Parties shall by all the means in their power maintain peace and harmony among the several **Indian Nations** who inhabit the country….

---

[28] Eagan by Keith v. Jackson, E.D.Pa.1994, 855 F.Supp. 765. Fed. R. Civ. P. 17VCCV
[29] McSparran v. Weist, C.A.3 (Pa.) 1968, 402 F.2d 867, certiorari denied 89 S.Ct. 1739, 395 U.S. 903, 23 L.Ed.2d 217
[30] <u>Atakapa Indian de Creole Nation v. Louisiana</u>, 6:18-CV-00190, 2018 WL 4222830, at *1 (W.D. La. July 23, 2018), <u>report and recommendation adopted,</u> 6:18-CV-00190, 2018 WL 4089385 (W.D. La. Aug. 27, 2018)

[31]id

The home base of the Atakapa Indians, Post d' Atakapa is located in New Iberia on the bayou near Jeanerette, specifically historic St. Martinville, Acadiana, and Opelousas are the Indian Nation's administrative centers. and the territory formerly known as New Spain is the basis of the American Iberian Empire.  The language of the Spanish treaty leaves the absolute sovereignty of the Atakapa Tribal Nation unquestioned.[32]   On or about December 7, 2018 The City of Baton Rouge issued his Majesty a "FINAL NOTICE" informing him that under City Ordinance 9:422, 9:423, and 9:424 "**All users of residential and business alarms inside the city limits of Baton Rouge must have a permit**" The City commanded his Majesty to comply with the notice or a Misdemeanor Summons (Citation) will be issued under City Ordinance 9:422, which may result in fines up to $250.00 per false alarm.  If this court does not enjoin and restrain the Baton Rouge Police Department then his Majesty will suffer irreparable harm (for which money damages cannot compensate)

vi.  Oil and Gas Leases

Where guardian secured secret interest in oil and gas lease granted in ward's lands, ward need not show damage to procure relief.[33] Ward held entitled to proceeds of guardian's fraudulent grant of oil and gas lease, where decree of cancellation was impossible as against innocent purchaser. Id

vii.  **American-l'iberian Indian Tribe of מֹשֶׁה Moses Family Integrity**

His Majesty contends that his family integrity is compromised.  The United States has accepted responsibility for the injuries inflicted on his Majesty and his people.  Plaintiffs have an undisputed substantive due process right to family integrity. Substantive due process protects parents' interest in "family integrity, and the care custody, and control of their children."[34] It also

---

[32] Johnson v. M'Intosh, 21 U.S. 543, 587, 5 L.Ed. 681 (1823)
[33] United States v. Dunn, 268 U.S. 121, 45 S.Ct. 451, 69 L.Ed. 876 (1925)
[34] M.G.U., 325 F. Supp. 3d at 119.

protects children's liberty interest in family association and integrity.[35] ("[T]here is a public interest in ensuring that [the child plaintiffs'] constitutional right to family association and integrity is upheld.");[36] ("a child's right to family integrity is concomitant to that of a parent").

The factual distinction in this case is immaterial to Plaintiffs' right to family integrity. Furthermore, defendants themselves have an important interest in promoting the CHRISTIAN EMPEROR, Edward Moses Jr and the Tribe of מֹשֶׁה Moses' family integrity:

> The state also shares the interest of the parent and child in their family's integrity,[37] ("the parens patriae interest favors preservation, not severance of natural familial bonds"), because the welfare of the state depends in large part on the strength of the family.

**d. The Balance of Harms and Public Interest Favor a Temporary Restraining Order**

U.S. News & World Report named Louisiana **the worst state in the U.S.** in its latest ranking comparing health care, education, infrastructure and other aspects of day-to-day life across the country.[38] When the Court grants this TRO, the United States Government will incur no harm, it is closed by authority of its president. Former United States President, Thomas Jefferson expressly stated in his Majesty's attached verified petition; one state owes to another state whatever it owes to itself, so far as that other stands in real need of its assistance, and the former can grant it without neglecting the duties it owes to itself. Such is the eternal and immutable law of nature.[39]

**e. Application for Writ of Habeas Corpus filed under title 28 Chapter 153**

The United States District Court for the Middle District of Louisiana issued a general order holding in abeyance Civil Matters involving the United States as a Party. However, the order does not affect habeas corpus cases filed under title 28 Chapter 153.

---

[35] See M.M.M. v. Sessions, No. 18-cv-1832, Order Granting Plaintiffs' Motion for Temporary Restraining Order (S.D. Cal., August 16, 2018)
[36] see, e.g., Wooley v. City of Baton Rouge, 211 F.3d 913, 923 (5th Cir. 2000)
[37] see Santosky v. Kramer, 455 U.S. 745, 766-67 (1982)]
[38] https://www.usnews.com/news/best-states/rankings
[39] Vattel, Emer de. The Law of Nations (Natural Law and Enlightenment Classics) (Kindle Locations 5355-5357).

### i. Application for Writ of Habeas Corpus is not confined to those in jail or like physical confinement

In the seminal case on the issue of Royal Sovereignty <u>Johnson v. M'Intosh</u> the United States Supreme Court found that Spanish Louisiana, New Spain or French Louisiana … is a country that is entirely occupied by numerous tribes of Aboriginal Indians, <u>who are in fact independent</u>. [40] In the Amistad case the court found that free born Africans are not within the jurisdiction of the United States or any of her states. Thus, this cause came on to be heard on the transcript of the record of the <u>District Court of the United States for the district of Louisiana</u>.[41] His Majesty is in custody or otherwise restrained such that he is absolutely entitled to habeas relief.[42] The United States Supreme Court in <u>Jones v. Cunningham</u> held that in the state courts, as in England, habeas corpus has been widely used by parents disputing over which is the fit and proper person to have custody of their child.[1213] History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.[43]

The term 'Indians,' as ordinarily used when referring to persons in the United States, is understood to refer to the members of that Aboriginal race of men who inhabited North America when it was found by Caucasian people.[44] By the St. of 1869, *c*. 463, § 1, "all Indians, <u>and "people of color", heretofore known and called Indians</u>, within this Commonwealth, are hereby made and declared to be citizens of the Commonwealth….[45] The Atakapas "are being held as wards of the State through the Louisiana Governor's Office of Indian Affairs … [a]nd in pupilage

---

[40] <u>Johnson v. M'Intosh</u>, 21 U.S. 543, 587, 5 L.Ed. 681 (1823)
[41] <u>La Amistad De Rues</u>, 18 U.S. 385, 393, 5 L.Ed. 115 (1820)
[42] <u>Atakapa Indian de Creole Nation v. Louisiana</u>, 6:18-CV-00190, 2018 WL 4222830, at *3 (W.D. La. July 23, 2018), report and recommendation adopted, 6:18-CV-00190, 2018 WL 4089385 (W.D. La. Aug. 27, 2018) (Rec Doc 13 pg 1-2)
[43] <u>Jones v. Cunningham</u>, 371 U.S. 236, 240, 83 S.Ct. 373, 376, 9 L.Ed.2d 285 (1963)

[44] <u>Frazee v. Spokane Cty.</u>, 29 Wash. 278, 286, 69 P. 779, 782 (1902)
[45] <u>Danzell v. Webquish</u>, 108 Mass. 133, 134–35 (1871)

15

under [the] United States. Under U.S. Const. amend. XIII, § 1 Neither slavery nor involuntary servitude…shall exist within the United States, or any place subject to their jurisdiction. This court should find that his Majesty did in fact make proper allegations that his property, liberty and freedom to rule his Nation are restrained with intent to injure by the United States and the State of Louisiana and its political subdivisions.

The habeas corpus jurisdictional statute implements the constitutional command that the writ of habeas corpus be made available.[2] While limiting its availability to those 'in custody,' the statute does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ can be used. To determine whether habeas corpus could be used to test the legality of a given restraint on liberty, this Court has looked to common-law usages and the history of habeas corpus both in England and in this country. [46] Issuance of the Great Writ is a civil proceeding, cognizable by courts of exclusively civil jurisdiction. The proceeding by habeas corpus has always been regarded in England as a civil proceeding. See Bacon's Ab., title Habeas Corpus ad subjiciendum; and Bushell's case in Vaughan's Reports.[47] The writ of habeas corpus may be used in civil as well as in criminal and political cases. A tutor deprived of the custody of his ward, or a husband of the company of his wife, may seek a restoration to their rights by a recourse to a writ of habeas corpus; so, may a debtor, illegally confined in a civil case. [48]

Accordingly, the illegal detention of his Majesty's tribal people as wards, pupils of the federal and state government, and deprivation of their birthrights, privileges and their property are sufficient enough to invoke the jurisdiction of this court for an order granting his writ of

---

[46] Jones v. Cunningham, 371 U.S. 236, 238, 83 S.Ct. 373, 374–75, 9 L.Ed.2d 285 (1963)
[47] State of Louisiana v. Judge of Commercial Court, 15 La. 192, 193 (1840)
[48] Hyde v. Jenkins, 6 La. 427, 436 (1834)

habeas corpus.**49** His Majesty added members of the Secretary of State and the Bureau of Indian Affairs[50] as parties respondent squarely raises the question of whether the United States, State of Louisiana and the Bureau of Indian Affairs now hold petitioner and his people in their 'custody' within the meaning of 28 U.S.C. s 2241such that he can by habeas corpus require the United States, the State of Louisiana and the Bureau of Indian Affairs to point to and to defend the law by which it justifies any restraint on the Christian Emperor's liberty. [51] (rec doc 38-2 pg 26 ¶ ssssss)

The question is whether the United States, Louisiana, the city of Baton Rouge and the Bureau of Indian Affairs significantly restrain his Majesty's liberty to do those things which in this country free men are entitled to do. Such restraints are enough to invoke the help of the Great Writ of Habeas Corpus.  Of course, that writ always could and still can reach behind prison walls and iron bars. But it can do more. It is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—<u>the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty</u>. Id

His Majesty is not in immediate physical imprisonment however, being classified as Ward, or pupil of the State and Federal Government imposes conditions which significantly confine and restrain his Majesty's leadership and his tribal peoples' freedom and property which taken as a whole is enough to keep them in the 'custody' of Louisiana and the United States within the meaning of the habeas corpus statute; thus if his Majesty can prove his allegations then this 'custody' is in violation of the 4th amendment, 5th Amendment, 13th amendment, and

---

[49] <u>Atakapa Indian de Creole Nation v. Louisiana</u>, 6:18-CV-00190, 2018 WL 4222830, at 1 (W.D. La. July 23, 2018), <u>report and recommendation adopted,</u> 6:18-CV-00190, 2018 WL 4089385 (W.D. La. Aug. 27, 2018); **§ 1154. Procedure for granting immigrant status s (a) Petitioning procedure**
**(1)(A)(i)** Except as provided in clause (viii), any National of America or citizen of the United States claiming that an alien(ward) is entitled to classification by reason of a relationship described in paragraph (1), (3), or (4) of section 1153(a) of this title or to an immediate relative status under section 1151(b)(2)(A)(i) of this title may file a petition with the Attorney General for such classification.
[50] (Rec Doc 38-2 pg 2)
[51] <u>Jones v. Cunningham</u>, 371 U.S. 236, 241, 83 S.Ct. 373, 376, 9 L.Ed.2d 285 (1963)

17

14th Amendment to the Constitution.[52] "[W]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."

WHEREFORE, the **CHRISTIAN EMPEROR de ORLEANS** seeks protection from a wrongful injury and restraint upon his liberty to be free from prosecution for failure to obtain an Alarm User Permit and prays for an order issuing his Majesty's writ of Habeas Corpus and an order granting him an emergency preliminary injunction and a temporary restraining order restraining the United States and other defendants both known and unknown against <u>erosion of his Majesty's right to be free from injury</u>.

His Majesty further prays for an order to restrain the defendants named in his verified complaint from engaging in anti-trust monopolistic commercial activity that further injures the Royal Crown. Finally, his Majesty prays that the "EMERGENCY TEMPORARY RESTRAINING ORDER" be issued with notice and be extended from time to time until the parties can set a hearing date for a preliminary and final injunction respectively.

| **CERTIFICATE OF SERVICE** | Respectfully Submitted |
|---|---|
| I hereby certify that a copy of the above pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties in the matter by operation of the court's electronic filing system.<br><br>S/<u>Edward Moses Jr</u> | BY: <u>/s/ Edward Moses Jr (B/N:30646)</u><br><br>MOSES LAW FIRM, L.L.C.<br>2900 Westfork Drive Ste 401<br>Baton Rouge, Louisiana 70827<br>Telephone (225) 295-5632<br>Telecopier (888)518-0559<br>Email: edward@moses-lawfirm.com |

---

[52] Rec Doc 5 pg 90-91